**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ADAM PETERS, ELIZABETH MATTERN,** | : | **No. 3:15cv152** |
| **TINA HALL, GARY GUESTO,** | : | |
| **and ROBERT KOHLER,** | : | **(Judge Munley)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF WILKES-BARRE,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Before the court for disposition is Defendant City of Wilkes-Barre's (hereinafter "defendant" or "Wilkes- Barre") motion to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). (Doc. 9).  The parties have fully briefed the matter and the motion is ripe for disposition.  For the reasons explained below, the court will deny Wilkes-Barre's motion.

**Background**

This case arises from Wilkes-Barre's enforcement of Ordinance No. 12 of 2013, the so-called "One-Strike Ordinance" (hereinafter the "Ordinance").  (Doc. 1, Compl. (hereinafter "Compl.") ¶ 12).  Wilkes-Barre adopted the Ordinance in August 2013 in an effort to combat drug and gun crime in the city.  (Id.; Compl. Ex. 1).  The Ordinance expanded the

grounds for which a city code officer suspends a rental license.  (Compl. Ex. 1)

Under the Ordinance, a rental unit is immediately stripped of its certificate of occupancy and occupancy license for six (6) months if a code enforcement officer determines that "[a]n occupant or owner has implied or actual knowledge of drug [or gun-related criminal] activity . . . in the rental unit, common areas, or on the premises or property."  (Id. at § 7-239(d)(1)(f)(vii-viii)).  The requirement of "implied or actual knowledge" is met if "the owner and/or occupant is charged [with] or convicted" of certain qualifying crimes.  (Id.)  Such knowledge can also be imputed to the occupant or owner "based on police knowledge and experience of drug [or gun-related criminal] activity on the property."  (Id.)

The Ordinance provides a twenty (20) day window in which any person aggrieved by such a closure order may appeal to a Housing Appeals Board, subject to a non-refundable appeal fee of $100.  (Id.)  The Ordinance does not provide any pre-closure procedures, and expressly states that a "claimed lack of knowledge by the owner, property manager or agent, if applicable, of any violation hereunder cited shall be no defense to closure of rental units . . . ."  (Id. at 5).

2

Plaintiffs each allege a distinct set of facts from which their collective claims arise, with the common thread that they all either owned or resided within a property closed under the Ordinance.  The court will first discuss the residential plaintiffs.

### Resident Plaintiffs

Plaintiffs Mattern and Hall claim that the defendant's Code Enforcement Office shut down the rental units where they each resided for six months.  (Compl. ¶¶ 47-103).

### Elizabeth Mattern

Plaintiff Elizabeth Mattern allowed her four-year-old daughter's father, Denver Pearson, to stay at her apartment, located at 516 North Main Street in Wilkes-Barre, during daytime hours on March 7, 2014.  (Id. ¶¶ 52-54).  Unbeknownst to Plaintiff Mattern, Pearson had an outstanding arrest warrant, possessed of an illegal substance, and hid two scales in Plaintiff Mattern's apartment.  (Id. ¶¶ 61-62).  Pearson was arrested in a raid while Plaintiff Mattern and her daughter were not at home.  (Id. ¶¶ 57-62).  Plaintiff Mattern returned to find her apartment in disarray and a closure notice on her door.  (Id.)

Police officers arrived and told Plaintiff Mattern she could have ten

3

minutes to retrieve clothes and leave.  (Id. ¶ 63).  While she gathered her

belongings, the officers received a radio call, after which they informed

Plaintiff Mattern she was under arrest.  (Id. ¶ 64).  She was cuffed,

transported to Wilkes-Barre police station, processed, and placed in a cell.

(Id. ¶¶ 65-67).  About two hours later, she was released with neither

charges nor explanation, and was not contacted by police again.  (Id.

¶¶ 67-68).

Plaintiff Mattern claims she was never notified about her right to an

appeal.  (Id. ¶ 75).  She further asserts she incurred the following damages

during the closure: 1) the vacant apartment was robbed of approximately

$1600 worth of personal property; 2) an additional $100 per week in travel

expenses to her workplace; 3) relocation costs after the closure; and 4)

higher rent at her new rental unit.  (Id. ¶¶ 76-79).

**Tina Hall**

Plaintiff Tina Hall, who is legally deaf and receives disability

payments, resided at 117 Grove Street in Wilkes-Barre with her seventeen-

year-old daughter.  (Id. ¶¶ 80-81, 83).  Plaintiff Hall's son, Jamel, also lived

with her until October 3, 2013, when he moved to Hazelton and Plaintiff

Hall and her landlord removed him from the lease.  (Id. ¶ 85).  Jamel

4

stayed overnight on October 28, 2013, because he had a meeting with his parole officer the next day.  (Id. ¶ 86).  As a result of that meeting, Jamel's parole officer and other officers performed a search on the Grove Street apartment seeking a firearm depicted in a photograph on Jamel's phone.  (Id. ¶¶ 87-91).

Officers discovered a firearm wrapped in plastic in a bedroom, and arrested Plaintiff Hall for unlawful possession of a firearm and receipt of stolen property, charges which were eventually nolle prossed.  (Id. ¶¶ 92-93, 102).   Plaintiff Hall's landlord received notice from city officials that as of October 30, 2013, the Grove Street apartment was closed for six months under the Ordinance and that he had a right to appeal.  (Id. ¶¶ 94, 96). Plaintiff Hall and her daughter moved in with another daughter and granddaughter due to the closure of their apartment.  (Id. ¶ 95).  Plaintiff Hall's landlord filed an appeal on October 31, 2013, and was notified on December 2, 2013, that a hearing was scheduled for December 21.  (Id. ¶¶ 97- 99).  The Board issued a decision on April 24, 2014–six days before the six-month closure would expire–denying the appeal.

### Owner Plaintiffs

The court next discusses plaintiffs who owned rental units.  Plaintiffs

5

Peters, Guesto, and Kohler all own properties in Wilkes-Barre.  These plaintiffs claim Wilkes-Barre closed their rental units for six months pursuant to the Ordinance in violation of their constitutional rights.

### Adam Peters

Plaintiff Adam Peters owns two rental units in Wilkes-Barre, including a unit located at 216 Carlisle Street, Apartment 2.  (Id. ¶ 21).  Beginning on March 1, 2013, Plaintiff Peters rented that apartment to Lateesha Lundy, a certified nursing assistant, after two clean background checks.  (Id. ¶ 26). On September 13, 2013, police arrested Patrick Miller, Lundy's boyfriend, in the Carlisle Street apartment for drug-related offenses.  (Id. ¶ 28).

A code enforcement officer ordered the Carlisle Street apartment closed for six months pursuant to the Ordinance.  (Id. ¶¶ 35-37). Immediately after the closure, Mayor Thomas Leighton held a press conference on the front porch of the property to announce the first closure under the Ordinance and stated that the city was "cracking down on the landlords bringing filth and dirt and crime into our city" and that "[w]e're going to hit these landlords that don't care about the city of Wilkes-Barre." (Id. ¶ 36).

Wilkes-Barre mailed Plaintiff Peters a letter confirming the

6

apartment's closure and his right to appeal.  (<u>Id.</u> ¶ 38).  Plaintiff Peters paid the $100 non-refundable fee and filed a petition to appeal.  (<u>Id.</u>)  The Housing Appeals Board heard the appeal on November 19, 2013.  (<u>Id.</u> ¶ 39).  The board issued its opinion, denying the appeal, on April 24, 2014, more than one month after the six-month closure period had expired.  (<u>Id.</u> ¶¶ 41-42).

Plaintiff Peters claims the following damages: 1) $3,750 in lost rent; 2) $2,600 in attorney's fees related to the appeal hearing; and 3) reputational damages as a result of the Mayor's statements characterizing Plaintiff Peters as a landlord "bringing filth and dirt and crime into the city." (<u>Id.</u> ¶¶ 43-46).

**Gary Guesto**

Plaintiff Gary Guesto owns four rental units in Wilkes-Barre, including one at 189 Hazle Street, which he rented to Ada Wells between October 1, 2012 and February 24, 2014.  (<u>Id.</u> ¶¶ 107-08).  On February 24, 2014, police arrested Ms. Wells and her boyfriend at the apartment for drug-related offenses.  (<u>Id.</u> ¶¶ 112, 114).  A closure notice was posted, but Plaintiff Guesto never received a letter notifying him of the closure or of his right to appeal.  (<u>Id.</u> ¶¶ 115-16).  Plaintiff Guesto claims that he was unable

7

to investigate the closure for two months because of serious health issues, and was then told that the twenty-day appeal period had passed.  (Id. ¶ 117).

Plaintiff Guesto claims damages in the amount of $3,900 in lost rental income.  (Id. ¶ 119).

### Robert Kohler

Plaintiff Robert Kohler owns ten rental properties in Wilkes-Barre, including the unit located at 91 Custer Street.  (Id. ¶ 121).  From approximately August 1, 2013, Natasha Golomb rented the Custer Street unit.  (Id. ¶¶ 123-25).  On March 20, 2014, Plaintiff Kohler's property-management company was notified that the front door to the Custer Street property was broken and a notice of some kind had been posted on the door.  (Id. ¶ 128).  Plaintiff Kohler received a letter the next day explaining that an arrest for gun- and drug-related offenses had occurred at the Custer Street property on March 19, 2014 and that the apartment was therefore closed for six months pursuant to the Ordinance.  (Id. ¶ 129).

Plaintiff Kohler filed an appeal, and the Housing Appeals Board set a hearing for two months later, on May 22, 2014.  (Id. ¶¶ 132-33).  The hearing was postponed three times, once because the board lacked

8

quorum, once because the Assistant City Solicitor was unavailable, and once because Plaintiff Kohler's attorney was unavailable.  (Id. ¶ 134).  The board heard the appeal on July 17, 2014,  four months after the Custer Street property was ordered closed.  (Id. ¶ 135).  The board rejected Plaintiff Kohler's appeal on July 23, 2014, with less than two months remaining in the closure term.  (Id. ¶ 137).

Plaintiff Kohler claims the following damages: 1) $1,400 in attorneys fees for the appeal; 2) $725 per month in lost rental income; and 3) $226 for maintenance costs and $72 per month for utilities, costs which otherwise would have been borne by the tenant.  (Id. ¶¶ 136, 140-41).

In sum, plaintiffs seek recompense for financial injuries, emotional and psychological pain and suffering, and reputational harm.  In addition to money damages, the plaintiffs seek injunctive and declaratory relief to address what they claim is an ongoing threat that defendant will close their respective properties without notice or due process because of the alleged misconduct of third parties.

To these ends, plaintiffs filed a complaint on January 22, 2015 under 42 U.S.C. § 1983.  (Doc. 1).  The complaint alleges three causes of action: Count I alleges unlawful seizure in violation of the Fourth Amendment,

9

Count II alleges excessive fines in violation of the Eighth Amendment, and Count III alleges violation of plaintiffs' Fourteenth Amendment procedural due process rights.  Defendant filed the instant motion to dismiss on March 27, 2015.  (Doc. 9).  The parties have fully briefed the matter and it is ripe for determination.

**Jurisdiction**

The court has federal question jurisdiction over this civil rights action brought under 42 U.S.C. § 1983.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way of damages or equitable relief).

**Legal Standard**

Defendant filed its motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).[1]   The court tests the

---

[1] In addition to Rule 12(b)(6), defendant also styles its motion as a challenge to subject matter jurisdiction under 12(b)(1), apparently based on the Younger abstention doctrine.  (Doc. 9, Def. Mot. at 1; Doc. 11, Def. Br. in Supp. at 4).  Defendant fails to argue, however, any basis upon which Younger abstention deprives this court of jurisdiction over otherwise cognizable federal claims.  Indeed, Younger abstention, where applied,

sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.  All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'"  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached

---

does not deprive the federal courts of jurisdiction, but rather represents an "exception to the 'virtually unflagging' obligation to decide cases where jurisdiction exists."  Sprint Communications, Inc. v. Jacobs, 134 S. Ct. 584, 590-91 (2013), citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).  Defendant has raised no other argument that we could conceivably construe as a challenge to this court's subject matter jurisdiction.  Thus, this motion will be decided under Rule 12(b)(6).

to the complaint and items appearing in the record of the case." <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  <u>See</u> <u>Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.</u>, 450 F.3d 130, 133 (3d Cir. 2006) (citing <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

Defendant raises several arguments in moving the court to dismiss plaintiffs' claims.  First, defendant argues the court should abstain from hearing any of plaintiffs' claims under the <u>Younger</u> abstention doctrine.  Second, defendant argues that plaintiffs have failed to plead a cognizable claim for a violation of procedural due process under the Fourteenth Amendment.  Third, defendant argues that plaintiffs have failed to articulate a proper Eighth Amendment claim.  And fourth, defendant asserts that plaintiffs' claims should be construed as takings claims, subject to exhaustion of state remedies and therefore unripe for our review. We will address these arguments in turn.

**I.  Younger Abstension**

The defendant urges the court to abstain from exercising jurisdiction

12

over plaintiffs' claims under the doctrine of <u>Younger v. Harris</u>, 401 U.S. 37

(1971).  Plaintiffs respond that <u>Younger</u> is inapplicable in this case.  For the

reasons articulated below, we agree with plaintiffs.

The Supreme Court has defined a narrow set of "exceptional"

circumstances in which "the prospect of undue interference with state

proceedings counsels against federal relief."  <u>Sprint Commc'ns, Inc. v.</u>

<u>Jacobs</u>, 134 S. Ct. 584, 588 (2013).  Abstention, however, remains entirely

the exception, and not the rule.  "In the main, federal courts are obliged to

decide cases within the scope of federal jurisdiction."  <u>Id.</u>  The Court has

stressed that "federal courts ordinarily should entertain and resolve on the

merits an action within the scope of a jurisdictional grant . . . ."  <u>Id.</u>  Indeed,

we are not simply to "refus[e] to decide a case in deference to the States."

<u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S.

350, 368 (1989) (hereinafter "NOPSI").

The <u>Younger</u> Court identified the primary context mandating

abstention: where a federal plaintiff seeks injunctive relief to halt a parallel,

pending state court proceeding.  <u>Id.</u>; <u>see also</u> <u>Younger</u>, 401 U.S. at 37.

The Court has since expanded application of the doctrine to "particular

state civil proceedings that are akin to criminal prosecutions . . . or that

implicate a State's interest in enforcing the orders and judgments of its courts." Sprint, 134 S. Ct. at 588 (internal quotations omitted).  Thus, the limited universe of suitable circumstances for Younger abstention consists, in its entirety, of "ongoing state criminal prosecutions," "certain civil enforcement proceedings," and "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial function." Id. at 591 (internal quotations omitted).

Defendant argues that its enforcement of the Ordinance constituted a "quasi-criminal" civil enforcement action, initiated by a state actor to sanction the federal plaintiff, and therefore qualifies for Younger abstention.  (Def.'s Br. in Supp. at 12).  The Supreme Court has specified that such proceedings qualify for Younger abstention if they are "akin to criminal proceedings in important respects," "characteristically initiated to sanction the federal plaintiff . . . for some wrongful act," and where "a state actor is routinely a party to the state proceeding and often initiates the action." Sprint, 134 S. Ct. at 592.

Plaintiff does not dispute this contention, and we agree.  Defendant's enforcement actions against plaintiffs fall squarely within the civil enforcement action category eligible for Younger abstention.  This,

14

however, does not end the inquiry.

Three additional conditions, articulated in Middlesex County Ethics Commission v. Garden State Bar Association, 457 U.S. 423, 432 (1982), must be satisfied for a court to apply Younger abstention in a quasi-criminal context.  Sprint, 134 S. Ct. at 593.  Following Middlesex, the Third Circuit mandates that "[t]he proponent of abstention must show that (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." Marran v. Marran, 376 F.3d 143, 154 (3d Cir. 2004).

Because defendant must demonstrate the presence of all three factors to succeed in moving the court to abstain under Younger, the absence of any single factor is dispositive.  Here, the defendant cannot establish the third factor.[2]

As previously stated, the proponent of abstention must demonstrate that the state's proceedings afford an adequate opportunity to raise federal

---

[2] Plaintiffs dispute defendant's ability to satisfy factor one.  We do have serious doubts that a challenge premised, at least in part, on a lack of pre-deprivation due process can be characterized as a collateral attack on an ongoing state proceeding; a hearing that never happened likely cannot qualify as "ongoing" or "pending."  We will not delve into this factor, however, as the clearer path lies with factor three.

claims.  The parties' arguments regarding plaintiffs' Fourteenth

Amendment due process claims are directly relevant to this analysis.  As

defendant notes, the Third Circuit has held that due process requires that

"a deprivation of a property interest be preceded by notice and opportunity

for hearing appropriate to the nature of the case."  Gikas v. Washington

Sch. Dist., 328 F.3d 731, 738 (3d Cir. 2003), citing Cleveland Bd. of Educ.

v. Loudermill, 470 U.S. 532, 542 (1985) (The "root requirement of the Due

Process Clause" is "that an individual be given an opportunity for a hearing

before he is deprived of any significant property interest.").

Accepting the facts alleged by the plaintiffs as true, the Ordinance,

as written and enforced by defendant, fails to provide any pre-deprivation

due process.  Specifically, the language in the Ordinance compels closure,

stating, "The violation of section 7-239(d)(1)(f) ii, iii, vii [drug offenses] or viii

[firearm offenses] **shall require** the closure of the rental unit(s) for a period

of six months at the direction of the City of Wilkes-Barre."  (Compl. Ex. 1 at

4 (emphasis added)).  The only recourse available to a tenant or owner of

a unit closed under the Ordinance is an appeal after the fact which must be

filed within twenty days of the closure order.

Regarding the Ordinance's appeal process, some plaintiffs were not

16

notified of the closure or their right to appeal and where notices were

provided, they were posted when the closures commenced or sent after

the fact.  Thus plaintiffs had neither notice nor opportunity to be heard

before the closures took effect.

Defendant also asserts that any constitutional deficiency in the

administrative review process could have been raised in a state-court

review of the Board's decision.  Even assuming, *arguendo*, that state-court

review was available to plaintiffs,[3] the Board failed to schedule appeals

hearings until weeks or months after closure, and delayed sending notice

of its decisions.  Thus, the Board did not notify the plaintiffs of its decisions

in a timely manner, and plaintiffs were provided no opportunity to raise their

claims in a state court until after all or substantially all of the full six-month

period had run.  "Younger abstention 'presupposes the opportunity to raise

and **have timely decided** by a competent state tribunal the federal issues

---

[3] Plaintiff argues that no state court jurisdiction exists for review of an administrative hearing regarding seizure or forfeiture of property.  (Doc. 15, Pl.'s Br. at 7).  The Ordinance is silent on state-court review, and defendant notified some plaintiffs only that the decision of the Board can be appealed to "any court of competent jurisdiction."  (Compl. Exs. 4, 7).  Defendant counters that state court review was available.  (Def.'s Reply at 15-16).  While we recognize this dispute exists, we do not need to resolve it to decide this motion.

involved.'" Meredith v. Oregon, 321 F.3d 807, 818 (9th Cir. 2003) (quoting

Gibson v. Berryhill, 411 U.S. 564, 577 (1973)) (emphasis added).  A post

hoc, laggard review of a deprivation without due process can hardly be

considered adequate opportunity to raise the claim that one's property

rights are being violated.[4]

These facts, if proven, establish that plaintiffs did not have an

adequate opportunity to raise constitutional claims during the

administrative process.  Accordingly, we reject defendant's argument that

we must abstain from hearing this case under Younger.

## II. Fourteenth Amendment: Due Process

Defendant argues that plaintiffs have failed to state a cause of action

for violation of Fourteenth Amendment due process because there were

avenues available to them on the state level that they did not utilize.  This

failure to exhaust state remedies, defendant argues, is fatal to plaintiffs'

claims.  We disagree.

As explained above, plaintiffs allege that the processes and

---

[4]  Indeed, other circuits have held that Younger does not apply where
the plaintiff did not have a pre-deprivation opportunity to raise constitutional
claims.  See, e.g., Meredith v. Oregon, 321 F.3d 807, 818-20 (9th Cir.
2003); Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 262 (1st Cir.
1987).

procedures available at the state level were inadequate to protect plaintiffs'

rights, and therefore violated their rights to due process.  Defendant argues

that "[a]bsent an allegation by Plaintiffs that the state court processes were

constitutionally inadequate to protect Plaintiffs' purported rights, Plaintiffs'

procedural due process claim cannot proceed." (Def.'s Br. at 18).  But that

is precisely what plaintiffs allege here.  Plaintiffs assert that defendant

violated their due process rights through its failure to provide pre-

deprivation notice and opportunity to challenge the orders, the lack of any

notice to two of the plaintiffs about any available review, and, regarding

those plaintiffs who did file appeals, the unavailability of state court review

until the closure periods were substantially or entirely completed.

Accordingly, the court will deny defendant's motion to dismiss

plaintiffs' Fourteenth Amendment due process claim.

## III. Eighth Amendment

Defendant also moves to dismiss plaintiffs' Eighth Amendment

claims.  The Eighth Amendment to the United States Constitution states,

"Excessive bail shall not be required, nor excessive fines imposed, nor

cruel and unusual punishments inflicted."  Plaintiffs claim that defendant's

closures of their properties were punitive forfeitures constituting fines under

19

the Eighth Amendment, and that these fines were grossly disproportionate to plaintiffs' conduct and therefore excessive.  (Compl. ¶¶ 153-55). Defendant argues that plaintiffs fail to plead a proper Eighth Amendment claim because they were not the subjects of criminal prosecutions.  Upon consideration, we find that the plaintiffs have stated a cause of action upon which relief can be granted for violation of the Eighth Amendment.

To state a claim that the closures under the Ordinance constitute excessive fines under the Eighth Amendment, plaintiffs must allege facts that would, if true, establish that the closures were fines, and the fines were excessive.  The parties agree that the defendant's closures pursuant to the Ordinance constitute forfeitures, but dispute whether they fall within the realm of the Eighth Amendment.

The law favors the plaintiffs:

The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense.  The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law.  It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties.

Austin v. United States, 509 U.S. 602, 609-610 (U.S. 1993) (quotations omitted).  Thus, "a modern statutory forfeiture is a 'fine' for Eighth

20

Amendment purposes if it constitutes punishment even in part, regardless of whether the proceeding is styled in rem or in personam." United States v. Cheeseman, 600 F.3d 270, 283 (3d Cir. 2010).  Further, while a forfeiture can serve more than one purpose (e.g. remedial, punitive, rehabilitative purposes), unless the civil sanction can "fairly be said solely to serve a remedial purpose, . . . [it] is punishment[.]" Austin, 509 U.S. at 610.

Plaintiff clearly alleges that the closures were imposed as a punitive measure.  As evidence, plaintiffs set forth allegations as to Mayor Thomas Leighton's statements that Defendant Wilkes-Barre was "cracking down on the landlords bringing filth and dirt and crime into our city" and that "[w]e're going to hit these landlords that don't care about the city of Wilkes-Barre." (Compl. ¶ 36).  Further, defendant itself argues that these enforcement actions resemble criminal prosecutions in important respects, calling them "quasi-criminal actions" "initiated to sanction the federal plaintiff[s] . . . for some wrongful act."  (Def.'s Br. at 7-8).  These closures are quite clearly intended to punish, and therefore the closures constitute fines under Eighth Amendment law.

Plaintiffs further allege that the closures are impermissibly excessive

because they punish individuals who bear no culpability for the underlying

criminal acts.  As such, the fines would automatically be excessive,

because any punishment of a person who is not culpable is

disproportionate and thus excessive.  Defendant does not contest this

argument.

Accordingly, we hold that plaintiffs have properly alleged a claim that

defendant violated their rights under the Eighth Amendment.

## IV. De Facto Takings Claims

Defendant next seeks to dismiss all of plaintiffs' claims because they

amount to "an alleged de facto taking."  (Def.'s Br. at 18).  It argues that

such claims are unripe because the plaintiffs have failed to exhaust the

proper state law procedures for redress.  (Id.)  Plaintiffs argue that their

claims do not constitute takings claims, because they do not seek just

compensation for a legitimate taking, but rather recompense for a

impermissible government interference with property rights.  After careful

review, we agree with plaintiff.

Pennsylvania state law defines a de facto taking, or inverse

condemnation, as an action by an entity vested with eminent domain power

which amounts to a "taking" of property without formal condemnation

proceedings.  (Def.'s Br. at 18, citing Application of Yudacufski, 500 A.2d 1271, 1273 (Pa. Commw. Ct. 1985)).  Section 1983 claims for due process violations and Fourth Amendment claims cannot be ripe, defendant argues, until plaintiffs pursue state law remedies under the Pennsylvania Eminent Domain Code, 26 PA. CONS. STAT. ANN. §§ 102, 502.  This is not a fair characterization of plaintiffs' claims however.

Plaintiffs' claims cannot be construed as takings claims because the closure did not amount to otherwise justifiable interference with property rights, but rather constituted impermissible abuses of authority, which no amount of compensation can authorize after the fact.  (Pl.'s Br. at 18).  Plaintiffs simply do not seek compensation for a government taking of their property; they seek damages for harm done due to violations of their constitutional rights.  This is not a distinction without a difference.  To require plaintiffs to exhaust state processes for a remedy they do not even seek would be improper.  See Carole Media LLC v. New Jersey Transit Corp., 550 F.3d 302, 307-08 (3d Cir. 2008) (holding that plaintiff alleging the government's action itself was forbidden is not required to seek just compensation).  We hold that plaintiffs' claims do not constitute de facto takings claims, and defendant's motion on this ground will be denied.

**Conclusion**

For the reasons stated above, Defendant Wilkes-Barre's motion to

dismiss will be **DENIED**.  An appropriate order follows.


**DATE:1/27/16**                              <u>**s/ James M. Munley**</u>
                                              **JUDGE JAMES M. MUNLEY**
                                              **United States District Court**